UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY H. SOLVEY,<br><br>                    Plaintiff,<br><br>        v.<br><br>SAVITHA SUNKARA, et al.,<br><br>                    Defendants. | Case No.: 1:23-cv-00682-KES-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING**<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Stanley H. Solvey is proceeding pro se and *in forma pauperis* in this civil rights action.

**I.     INTRODUCTION**

The Court issued its First Screening Order on August 2, 2023. (Doc. 11.) It determined Plaintiff's original complaint stated a cognizable Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Sunkara but failed to state a claim against any other named defendant. (*Id*. at 11.) Plaintiff was directed to file a first amended complaint, or a notice indicating he wished to proceed only on his cognizable claim, or a notice of voluntary dismissal. (*Id*. at 11-12.)

On October 3, 2023, following an extension of time, Plaintiff filed a first amended complaint. (Doc. 17.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

2

quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**IV.   DISCUSSION**

**A. Plaintiff's First Amended Complaint**

Plaintiff names Dr. Savitha Sunkara, E. McDaniel, C. Bell, and L. Vasquez, all employed at California State Prison, Corcoran, as well as S. Gates, "Chief Appeals Healthcare Branch, at Sacramento," as defendants in this action, in their individual and official capacities. (Doc. 17 at 1-2, 7-9.) Plaintiff seeks a declaratory judgment,[1] "[g]ranting [of] a future motion for preliminary

---

[1] To the extent Plaintiff's amended complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

4

injunction ordering the Defendants to maintain the regiment recommended by the Endocrinologist specialist Dr. Eisenbud" or similar relief,[2] "[g]ranting a FRCP Rule 52 hearing to make a findings of facts, post hearings," and compensatory damages of $2,100,000 and "punitive damages in a high single digit ratio," a jury trial, attorney fees[3] and costs, and any other relief deemed "just, proper, and equitable." (*Id*. at 20.)

### B. The Factual Allegations

Plaintiff arrived at California State Prison, Corcoran on June 29, 2021. (Doc. 17 at 9.) He is an insulin dependent diabetic who requires "a certain 'Non-Insulin' injection medication" called Victoza. (*Id*.) The medication was prescribed by a physician at his former institution at the "recommendation of endocrinologist (diabetic specialist) Dr. Elliott Eisenbud" in April 2018. (*Id*.) Plaintiff asserts he injected himself twice daily with Victoza to good effect. (*Id*. at 10.) Plaintiff states he also suffers from peripheral neuropathy; when his blood sugar is elevated, he experiences burning and stabbing sensations in his feet. (*Id*.) Plaintiff contends high blood sugars can irreparably damage nerve tissue and cells, causing numbness and loss of feeling in toes and feet, and sores that become worse with walking or standing. (*Id*.) Plaintiff also asserts he suffers from slow healing sores, making him more susceptible to bacterial infections. (*Id*.) To treat this condition, Plaintiff was prescribed Lyrica, which he takes three times a day. (*Id*.) Plaintiff contends that when his blood sugars test between "80-90mg/dL at fast (6:30am), his nerve pain is low. 0-1 of 10 on the pain scale. When Plaintiff's blood sugars are well regulated and his A1c is between 5.5 and 6.0, Plaintiff has low to zero feet pain" from diabetic mellitus type 2 with peripheral neuropathy. (*Id*.)

After arriving at Corcoran, Plaintiff was evaluated by Defendant Sunkara. (Doc. 17 at 11.) Plaintiff informed Sunkara of ongoing litigation "concerning prior medical treatment" he received at Kern Valley State Prison, requesting a "compassionate advocate, not the harsh sadistic treatment" he previously received. (*Id*.) Plaintiff states following a blood draw of July 10, 2021,

---

[2] The Court previously denied Plaintiff's motion for a temporary restraining order and preliminary injunction on a similar basis. *See* Docs. 13 & 16.

[3] Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

5

Sunkara discontinued the Victoza in the absence of an adequate alternative "due to A1c lab report of 5.9," an optimal level for his "individual complex diagnosis: 'insulin resistance with peripheral neuropathy.'" (*Id*.) Plaintiff submitted medical requests "indicating this was a medical mistake" and that Sunkara had discontinued the medication without consulting him. (*Id*.) On August 3, 2021, Plaintiff saw Sunkara for "continuous high blood sugars, and related feet pain," and notified Sunkara that the medications she was prescribing would be ineffective as they had been tried before. (*Id*.) In response, Plaintiff asserts Sunkara "maliciously comment[ed], 'my colleague you're suing' and 'I already know.'" (*Id*. at 12.) On that same date, Sunkara increased the Lyrica dosage despite Plaintiff's "intention to evolve away from taking medications for pain, specifically Lyrica." (*Id*. at 12.)

After two months of unsuccessful efforts to informally resolve the issue, Plaintiff filed a medical grievance on September 21, 2021. (*Id*. at 11.) Eventually, on February 15, 2022, "after 7 months of conscious disregard to Plaintiff's Health and the wanton infliction of pain, Plaintiff was restarted back on" Victoza. (*Id*. at 12.) Within weeks, his "feet pain went from a constant 4-5 of 10 down to a level of 0-1 of 10." (*Id*.) Plaintiff asserts Defendant Sunkara "made numerous excuses" concerning her discontinuation of Victoza and denied Plaintiff's requests for alternative medications even after elevated blood sugars and Plaintiff's report of blurry vision that impaired his legal work and schoolwork. (*Id*. at 12-13.)

Next, Plaintiff states that on October 14, 2021, in *Solvey v. Gates*, et al., case number 1:19-cv-01444-JLT-GSA, Judge Austin issued a discovery and scheduling order that included a discovery deadline of March 14, 2022. (Doc. 17 at 13.) He contends that due to his vision impairment and the discontinuation of Victoza, he "misread and could not read" the order and missed the deadlines to request interrogatories and admissions and to move for a written deposition of Dr. Andrew Zepp. (*Id*.) He states his "requests were returned to [him] as untimely by the D.A.G. Ms. Sarah E. Singer with a copy of the 'Scheduling Order' enclosed." (*Id*.) Plaintiff alleges his legal claim "of that discovery Written Deposition and Request for Admissions/Interrogatories is now lost" and asserts a "Denial of access to Court by Official Misconduct causing the loss of a non-frivolous/arguable claim. Due to Vision Impairment by

1    infliction deliberately." (*Id*. at 13-14.) Plaintiff asserts Sunkara retaliated against him for filing
2    grievances and/or for the earlier lawsuit involving Dr. Zepp, citing her comments during
3    treatment and the discontinuation of Victoza. (*Id*. at 14-15.)

4         On November 16, 2021, Plaintiff alleges he was interviewed by Defendant Vasquez, a
5    registered nurse, concerning his grievance involving the discontinued Victoza. (Doc. 17 at 15.)
6    He alleges Vasquez had actual and constructive knowledge that his serious medical needs "were
7    not being met: Diabetes with peripheral neuropathy causing pain and vision impairment." (*Id*.)
8    Despite that knowledge, Plaintiff asserts Vasquez failed to take any action between the date of his
9    grievance and the reinstatement of the Victoza prescription – a period of approximately five
10   months. (*Id*.)

11        Next, Plaintiff alleges Defendants Bell and McDaniel denied his grievance on December
12   8, 2021, citing Vasquez's recommendations or interview as the basis for their denial. (Doc. 17 at
13   16.) He maintains Bell and McDaniel chose to consciously disregard objective evidence that he
14   "was in pain and had vision impairment and had knowledge of an effective course treatment as
15   Plaintiff was effective on Victoza for 5 years prior to this incident." (*Id*.) Plaintiff concludes Bell,
16   McDaniel, and Vasquez are liable for his pain between September 21, 2021, and February 28,
17   2022, when the pain subsided. (*Id*.) Further, Plaintiff contends Defendant Gates is liable for
18   denying his grievance at the headquarters level because he "took no action, causing continued
19   injury and suffering to Plaintiff" despite having actual notice. (*Id*.) Plaintiff argues all five
20   defendants "frustrated or hindered Plaintiff's efforts to pursue a legal claim by not treating
21   Plaintiff's high blood sugars/diabetes …." (*Id*. at 17.)

22        Plaintiff alleges during the period between July 2021 and late February 2022, he tried
23   numerous methods to relieve his foot pain without good result and was "deathly afraid of
24   continuously breaking the skin on his feet with scratching with the condition he suffered, could
25   result in amputation of the feet/foot if infection occurred." (Doc. 17 at 17-18.)

26        **C.  Plaintiff's Claims**

27        The Court construes Plaintiff's first amended complaint to assert Eighth Amendment
28   deliberate indifference to serious medical needs claims and First Amendment retaliation and

access to courts claims against the named Defendants.[4]

### *Eighth Amendment: Deliberate Indifference to Serious Medical Needs*

<u>Applicable Legal Standards</u>

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an

---

[4] Plaintiff did not exclusively use the Court's complaint form. Rather, he used portions of it, writing "SEE ATTACHED COMPLAINT" on page 3 under "Claim I." (*See* Doc. 17 at 3.) In the separate typed document titled "Civil Right's Complaint 42 U.S.C. § 1983," Plaintiff includes all factual allegations under the heading "<u>Claim 1</u>." (*Id.* at 7, 9.) Despite citing to the Eighth Amendment and medical care (*id.* at 3, 18-19) in identifying his claim herein, the body of Plaintiff's first amended complaint references "retaliation" and "access to courts" several times. Out of an abundance of caution, the undersigned addresses those allegations as well.

8

individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

### Analysis

As before, liberally construing the first amended complaint and accepting all facts as true, the Court finds "Plaintiff's allegations assert the discontinuation of Victoza was medically unacceptable under the circumstances and Dr. Sunkara chose this course in conscious disregard of an excessive risk to Plaintiff's serious health conditions. Plaintiff has sufficiently alleged that Dr.

9

Sunkara was deliberately indifferent to his serious medical needs associated with his diabetes mellitus and pain from his neuropathy." (*See* Doc. 11 at 9.)

However, even liberally construing the first amended complaint and accepting all facts as true, Plaintiff fails to allege deliberate indifference to serious medical needs claims against Defendants Bell, Gates, McDaniel, and Vasquez. As Plaintiff was advised in the First Screening Order, a "prison official's mere administrative review of a prisoner's appeal cannot serve as the basis of the official's liability under § 1983." (Doc. 11 at 10-11 [citations omitted].) As before, Plaintiff fails to allege "any other adverse actions taken by" these individuals "in relation to his diabetes and medications prescribed to treat his conditions." (*Id*. at 11.) Here, Plaintiff merely reasserts the same allegations — that Bell, Gates, McDaniel, and Vasquez, reviewed his grievance and determined no further intervention was warranted. Those allegations do not state a claim upon which relief can be granted because prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)); *Towner v. Knowles*, No. CIV S-08-2823 LKK EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims based on defendant's alleged screening-out of plaintiff's inmate appeals without any basis); *Williams v. Cate*, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims"); *see Jordan v. Asuncion*, No. CV 17-1283 PSG (SS), 2018 WL 2106464, at *3 (C.D. Cal. May 7, 2018) ("[A] prisoner [does not] have a constitutional right to any particular grievance outcome"). Further, for those reasons, granting Plaintiff leave to amend this claim as to Bell, Gates, McDaniel, and Vasquez would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

In short, Plaintiff plausibly alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Sunkara only.

//

//

*First Amendment: Access to Courts*

<u>Applicable Legal Standards</u>

Prisoners retain the First Amendment right "to petition the government for a redress of [] grievances," which includes the specific right "to meaningful access to the courts[.]" *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011) (citation omitted), abrogated on other grounds as stated in *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The constitutional right of access to the courts generally requires prison officials to ensure that prisoners have the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To that end, depending on the circumstances, prison officials may be required affirmatively to "help prisoners exercise their rights" (*e.g.*, provide reasonable access to "adequate law libraries or adequate assistance from persons trained in the law"), or simply to refrain from "active interference" in prisoner litigation. *Silva*, 658 F.3d at 1102 (citation omitted); *see Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law") (overruled in part on other grounds, *Lewis*, 518 U.S. at 354). Prison officials, however, are not required to ensure access beyond "[t]he tools ... inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355 ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.... Impairment of [such] other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

To state a viable denial of access claim, a prisoner must plausibly show that some official misconduct (*e.g.*, alleged inadequacies in the jail's library facilities or legal assistance program) caused "actual injury" —that is, that it frustrated or is impeding plaintiff's attempt to bring a nonfrivolous legal claim. *Lewis*, 518 U.S. at 348-49; *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349) ("'Actual injury' means 'actual

1  prejudice with respect to contemplated or existing litigation'"), cert. denied, 566 U.S. 911 (2012).
2  The plaintiff's complaint must describe the alleged underlying claim, whether anticipated or lost,
3  and show that it is "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S. 403, 415
4  (2002).

Analysis

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff fails to state a First Amendment access to courts claim upon which relief can be granted against any named Defendant. A review of the docket[5] for *Solvey v. Gates*, number 1:19-cv-01444-JLT-GSA, reveals a Discovery and Scheduling Order issued on October 14, 2021, including a discovery deadline of March 14, 2022. (No. 19-1444 Docket Entry No. 45.) Accordingly, the period at issue in Plaintiff's first amended complaint — July 2021 to late February 2022 — involves the discovery period set in Plaintiff's other action. Nevertheless, the undersigned notes Plaintiff could have sought an extension of the March 14, 2021, discovery deadline when his pain and medical issues resolved on or before February 28, 2022. He did not do so. More significantly, despite Plaintiff's assertion that due to the action of Defendant Sunkara and inaction by the remaining Defendants he "lost" a claim in the other action, the Court does not agree. In fact, the docket for that action reveals Plaintiff filed a 166-page summary judgment motion on June 9, 2022 (No. 19-1444 Docket Entry No. 53) that was resolved on the merits (No. 19-1444 Docket Entry Nos. 95 & 105). Moreover, the presiding district judge considered and denied Plaintiff's subsequently filed motion for reconsideration. (No. 19-1444 Docket Entry Nos. 110 & 113.) Finally, the Court notes that Plaintiff's appeal before the Ninth Circuit Court of Appeals, related to both the denial of his summary judgment motion and judgment being entered in favor of Defendant Andrew Zepp and his motion for reconsideration remains pending disposition by the Court of Appeals. *See Solvey v. Gates*, No. 24-251 (9th Cir.) (last visited Sept. 23, 2025). Thus, it cannot be said that any action or inaction by the named Defendants frustrated or impeded

---

[5] *See Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state courts"); *Chandler v. United States*, 378 F.2d 906, 909 (9th Cir. 1967) ("[A] federal district court can take judicial notice of its own records, and this is the established rule").

Plaintiff's attempt to bring a nonfrivolous legal claim; indeed, Plaintiff's claim was fully adjudicated. *Lewis*, 518 U.S. at 348-49; *Greene*, 648 F.3d at 1018. Additionally, that outcome is not changed because Plaintiff asserts earlier discovery efforts were impacted by the action or inaction of the named Defendants. Notwithstanding Plaintiff's contentions regarding his impacted ability to serve interrogatories and requests for admissions, the undersigned observes that Plaintiff's summary judgment motion filed in that action references Defendant Zepp's responses to Plaintiff's first set of interrogatories dated December 28, 2021 (*see* No. 19-1444, Docket Entry No. 53 at 128-138) — meaning Plaintiff successfully served interrogatories in that action at some point during the period he asserts he was unable to do so (i.e., July 2021 through late February 2022).

In sum, Plaintiff cannot state a viable First Amendment access to courts claim. *Lewis*, 518 U.S. at 348-49; *Christopher*, 536 U.S. at 415. Further, granting Plaintiff leave to amend this claim against the named Defendants would be futile. *Hartmann*, 707 F.3d at 1130.

### *First Amendment: Retaliation*

#### Applicable Legal Standards

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may

include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Analysis

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff plausibly alleges a retaliation claim against Defendant Sunkara.[6] Specifically, Plaintiff alleges he advised Sunkara that he had filed suit against Dr. Andrew Zepp, his care provider at his previous institution, before Sunkara discontinued his Victoza prescription on July 13, 2021. He further asserts Sunkara made several adverse comments involving Plaintiff's complaints and/or lawsuit involving Zepp, including the period before and after Plaintiff filed a grievance against Sunkara on September 21, 2021. *Rhodes*, 408 F.3d at 567-68; *McCollum*, 647 F.3d at 882. Nevertheless, Plaintiff fails to plausibly allege a retaliation claim against any other named Defendant. Those individuals' involvement concerns Plaintiff's allegations that they failed to approve or grant his grievance against Sunkara. To the extent he asserts they did so in retaliation, Plaintiff's allegations are nothing more than speculation. *McCollum*, 647 F.3d at 882-83; *Wood*, 753 F.3d at 905. Nor has he sufficiently alleged any action by Bell, Gates, McDaniel, or Vasquez was a "substantial" or "motivating" factor behind their challenged conduct. *Brodheim*, 584 F.3d at 1269, 1271.

Thus, Plaintiff has stated a cognizable First Amendment retaliation claim against Defendant Sunkara but fails to allege a plausible retaliation claim against any other named Defendant. And granting Plaintiff further leave to amend this claim against Defendant Bell, Gates, McDaniel, and Vasquez would be futile. *Hartmann*, 707 F.3d at 1130.

### D. Official and Individual Capacities

In its First Screening Order, the Court noted "Plaintiff has not indicated whether he sues

---

[6] In its First Screening Order, the Court noted the original complaint suggested Defendant "Sunkara took adverse action against [Plaintiff] by improperly managing his medications" but it was "unwilling to make an inference that the removal of Victoza was *because of* Plaintiff's litigation activities." (Doc. 11 at 10, italics in original.)

Defendants in their official or individual capacities" and presumed "that Defendants [were] sued in their individual capacities." (Doc. 11 at 7.) As noted above, in his first amended complaint, Plaintiff names all Defendants in both their official and individual capacities. (Doc. 17 at 1, 7.) Also as noted above, Plaintiff seeks money damages and injunctive relief. (*Id.* at 19-20.) However, the Court has since denied Plaintiff's motion for injunctive relief. (*See* Doc. 16.) Thus, there appears no basis upon which to permit Plaintiff to sue the named Defendants in their official capacities in his first amended complaint.

### E. Summary of Screening Findings

In conclusion, Plaintiff's first amended complaint states the following cognizable claims: an Eighth Amendment deliberate indifference to serious medical needs claim and a First Amendment retaliation claim against Defendant Sunkara. Plaintiff fails to assert any other cognizable claim against any other named Defendant. Therefore, the Court will recommend this action proceed only as to those claims against Sunkara, in her personal capacity only, and that the remaining claims and defendants be dismissed.

### V.    CONCLUSION AND RECOMMENDATIONS

For the reasons given above, the undersigned **HEREBY RECOMMENDS** as follows:

1. That this action **PROCEED** *only* on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs and First Amendment retaliation claims against Defendant Sunkara, in her personal or individual capacity only;

2. That any remaining claims asserted against any other named Defendant be **DISMISSED**; and

3. That Defendants C. Bell, S. Gates, E. McDaniel, and L. Vasquez be **DISMISSED** from the action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 23, 2025**

UNITED STATES MAGISTRATE JUDGE